M. Jonathan Hayes (Bar No. 90388)
**RESNIK HAYES MORADI LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
jhayes@rhmfirm.com

*Attorneys for Debtor*
Samuel James Esworthy

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re | Case No. 1:16-bk-11985-MT |
| | |
| | Chapter 11 |
| SAMUEL JAMES ESWORTHY, | |
| | |
| Debtor. | **DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION** |
| | |
| | ***Hearing on Confirmation of the Plan:*** |
| | |
| | Date: December 12, 2018 |
| | Time: 9:30 a.m. |
| | Place: Courtroom 302 |
| | 21041 Burbank Boulevard |
| | Woodland Hills, CA 91367 |

///

///

///

///

///

RESNIK HAYES
MORADI  LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Contents

**I.**    **INTRODUCTION** ...................................................................................**4**

**II.**   **INTERPRETATIONS AND RULES OF CONSTRUCTION** .................**4**

Interpretation, Computation of Time and Governing Law ........................ 4

Rules of Interpretation ............................................................................. 4

Time Periods ............................................................................................. 5

Section Numbers ....................................................................................... 5

**III.**  **CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS** ....................................................................................**5**

A.    General Overview ........................................................................... 5

B.    Unclassified Claims ........................................................................ 6

C.    ADMINISTRATIVE EXPENSES ................................................. 6

D.    PRIORITY TAX CLAIMS ............................................................ 7

E.    CLASSIFIED CLAIMS AND INTERESTS - SUMMARY ......... 8

F.    CLASSIFIED CLAIMS AND INTERESTS**Error! Bookmark not defined.**

G.    Means of Performing the Plan ...................................................... 18

    i.    Funding for the Plan ......................................................... 18

    ii.    Management of the Reorganized Debtor ......................... 18

    iii.    Disbursing Agent .............................................................. 18

    iv.    Distributions ..................................................................... 18

**E.**   **TREATMENT OF MISCELLANEOUS ITEMS** ..........................**19**

a)    Executory Contracts and Unexpired Leases ............................... 19

    1)    Assumptions ...................................................................... 19

    **2)    Rejections** ......................................................................... 19

b)    Regulatory Commission Approval ............................................... 20

c)    Retention of Jurisdiction .............................................................. 20

**F.**   **EFFECT OF CONFIRMATION OF PLAN** ................................**20**

**RESNIK HAYES
MORADI LLP**

1.   Discharge ...................................................................................................... 20

2.   Revesting of Property in Debtor ................................................................... 20

3.   Modification of Plan ..................................................................................... 21

4.   DEFAULT ..................................................................................................... 21

5.   Post-confirmation status report .................................................................... 21

6.   Quarterly Fees .............................................................................................. 22

7.   Post-Confirmation Employment ................................................................... 22

8.   Post-Confirmation Conversion/Dismissal .................................................... 22

9.   Final Decree .................................................................................................. 23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**RESNIK HAYES
MORADI LLP**

## I. **INTRODUCTION**

Samuel James Esworthy ("the Debtor"), Debtor-in-Possession in the above-referenced Chapter 11 case, commenced his bankruptcy case by filing a voluntary petition under Chapter 11 of 11 U.S.C. §101 et seq. (the "Bankruptcy Code") on July 8, 2016.  He is hereinafter referred to as the "Debtor."

Chapter 11 allows the Debtor, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization. The Chapter 11 plan of reorganization may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  *The Debtor is the proponent (the "Proponent") of this Chapter 11 Plan of Reorganization* (the "Plan").

In summary, this Plan provides for payment to holders of allowed claims.  The timing of Plan payments to particular creditor groups will depend upon their classification under the Plan.  The Effective Date of the Plan shall be the first Business Day that is fourteen (14) calendar days after entry of the confirmation order, with payments beginning on the first day of the following month.

A DISCLOSURE STATEMENT DESCRIBING CHAPTER 11 PLAN OF REORGANIZATION (hereinafter the "Disclosure Statement") also accompanies this Plan. The Disclosure Statement describes the Plan and provides additional information to enable creditors to make informed decisions about whether to vote for or against the Plan.

The following are the specific provisions of the Plan.

## II. **INTERPRETATIONS AND RULES OF CONSTRUCTION**

**INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW**

**RULES OF INTERPRETATION**

For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release or other agreement or

**RESNIK HAYES
MORADI LLP**

document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any references in the Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented; (d) unless otherwise specified in a particular reference, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; and (g) the rules of construction set forth in §102 of the Bankruptcy Code shall apply.

**TIME PERIODS.**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**SECTION NUMBERS.**

References in this Plan and the Disclosure Statement to a code section are references to the United States Bankruptcy Code (Title 11 of the United States Code) except as otherwise indicated.

## III.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. GENERAL OVERVIEW

As required by the Bankruptcy Code, the Plan separates claims and interests into various categories and classes according to the nature and legal rights associated with such claims and interests.  The Plan designates which classes are impaired and which classes are unimpaired.  The Plan also describes the treatment each class will receive under the Plan. The Proponents will ask the Bankruptcy Court to confirm this Plan pursuant to 11 U.S.C. §1129(b) on any impaired classes if any of these classes do not vote to accept the Plan and

**RESNIK HAYES
MORADI LLP**

1  if the Plan can otherwise be confirmed, notwithstanding the lack of acceptance by the

2  Shareholders.

3  **B. <u>UNCLASSIFIED CLAIMS</u>**

4  Certain types of claims are not placed into voting classes; instead, they are

5  unclassified.  Holders of unclassified claims not considered impaired and not entitled to

6  vote on the Plan; rather the holders of unclassified, unimpaired claims and interests are

7  automatically entitled to specific treatment provided for them in the Bankruptcy Code.

8  The following categories of claims are neither classified nor impaired under the

9  Plan and are not entitled to vote on the Plan.

10

11  **C. <u>ADMINISTRATIVE EXPENSES</u>**

12  Administrative expenses are claims for costs or expenses of administering the

13  Debtor's Chapter 11 case that are allowed under Bankruptcy Code §507(a)(1).  The

14  Bankruptcy Code requires that all administrative claims be paid on the Effective Date of

15  the Plan, unless a particular claimant agrees to a different treatment.  The following is an

16  estimate of the §507(a)(1) administrative claims that will be incurred and unpaid through

17  the Effective Date of the Plan and their treatment under this Plan.

18

| **Name** | **Amount Owed** | **Treatment** |
|---|---|---|
| M. Jonathan Hayes, Resnik Hayes Moradi LLP ("RHM") (Attorney for the Debtor) | $25,000-30,000 - estimated to be owed on the Effective Date. ($21,000 approx is owed as of Sept 24, 2018) This amount is net of the initial retainer paid of $20,000 and one postpetition payment of $20,000. | RHM has agreed to accept $10,000 up front and monthly payments until the fees are paid in full, once the fees are approved by the Court, unless the Debtor is able to pay the fees from other sources.<br><br>In the event there is a default by Debtor in his payment of fees to RHM. The firm will give him notice of the default by electronic mail and advise him that he has ten (10) days to cure the default.<br><br>If Debtor does not cure within that time period, SRH will be permitted to accelerate the |

**RESNIK HAYES MORADI LLP**

6

| | | |
|---|---|---|
| | | balance due at the time and enforce the order of this Court approving the fees by whatever means are available to it including the costs and expenses related to the recording of the order and costs of collection. RHM shall not be required to get any further approval of this Court for payments related to outstanding fees.<br><br>SRH and Debtor are permitted to communicate and agree to payment of SRH's administrative claim on an expedited basis, if the ability to pay arises. |
| Clerk's Office Fees | $0  (estimated | Paid when due |
| Office of the U.S. Trustee Fees | $325 - $650 per quarter (estimated) | Quarterly fees, as required by 28 U.S.C. §1930(a)(6), shall be paid until a final decree is entered or the case is dismissed or converted. |
| TOTAL | $45,000 - $50,000 | |

## **Court Approval of Fees Required**

Requests by professionals for payment of fees and costs are generally subject to review and approval by the Court.

Fees of the Court Clerk and the Office of the United States Trustee are not subject to Court approval and may be paid in the ordinary course of business when due.

## D. **PRIORITY TAX CLAIMS**

Priority tax claims are certain unsecured income, employment and other taxes described by §507(a)(8).  The Code requires that each holder of such a §507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding five years from the petition date.  The Debtor does not believe that he has any priority creditors.  Should there be any priority taxes owed by the Debtor, he will pay those in full in monthly installments with interest at the governmental rate over a five year period beginning from the petition date.

## E. **CLASSIFIED CLAIMS AND INTERESTS - SUMMARY**

### i. **Summary of Treatment and Payment Amounts**

| | |
|---|---|
| Class 1 – Wells Fargo Bank Renault Property | Paid in full, $356,724, $2,140 per month, 6% interest fixed |
| Class 2 – Wells Fargo Bank Weidner Property | Paid $340,000, $1,930 per month, 5.5% interest fixed |
| Class 3 – SPS, Delano Property | Paid $285,000, $2,473.00 per month, 5.25% interest fixed |
| Class 4 – Nationstar, Millbury Property | Paid in full, $1,523 per month, 5% interest fixed |
| Class 5 – Nationstar, Ben Ave. Property | Paid in full, $1,621 per month, 5.25% interest fixed |
| Class 6 – Wells Fargo Bank, Maclaren Property | Paid $225,000, $1,349 per month, 6.0% interest fixed |
| Class 7 – Fay Servicing, Inyo Property | Paid $315,000, $1,789 per month, 5.5% interest fixed |
| Class 8 – Los Angeles County Property Taxes | Paid in full over 5 years from petition date |
| Class 9 – Unsecured creditors | Paid $48,000 over four years or approx. 14% of unsecured claims |

A list of all creditors of this estate is attached as **Exhibit "D"** to the Third Amended Disclosure Statement.

## A. <u>CLASSIFIED CLAIMS AND INTERESTS</u>

**Class 1**

Secured claim of: Wells Fargo Bank

Property address or description of collateral: 18343 Renault Street, La Puente, CA 91733.  This is residential rental property. The property is occupied by Gloria Nava, who pays $1,725 per month, on a month-to-month basis.  The Debtor values this property at $360,000.

Priority of lien: First deed of trust.

Total amount of claim: $356,724 per proof of claim No. 3-1.

IMPAIRED and entitled to vote

Interest rate: 6% fixed

Monthly payment: $2,140.40

First payment date:  Payments will begin on January 1, 2019.

Treatment:  The Debtor will pay the claim in full.  WFB will retain its lien until the secured claim is paid in full.  The order closing this case may include this language and may be recorded at the County Recorder's Office by the Debtor.   No new loan documents will be required, unless required by the lender.  The terms of the Stipulation shall be incorporated into the Plan of Reorganization as if set forth in full.

The Debtor shall receive credit against the total allowed claim for all pre- or post-petition payments not accounted for in the schedules or by the proof of claim, if any, which total shall be decreased accordingly – the holder of this claim shall provide the Debtor or his counsel with a statement regarding the current balance due as reasonably requested.

Debtor may satisfy the allowed secured claim by selling or refinancing the collateral, which shall obligate the holder of the claim in this class to reconvey or release its deed of trust or other lien in conjunction with such transaction without further order of this Court.

**RESNIK HAYES
MORADI LLP**

**Class 2**

Secured claim of: Wells Fargo Bank

Property address or description of collateral: 13038 Weidner Street, Pacoima, CA 91331.  This is the Debtor's residential rental property. The property is occupied and the Debtor is collecting $2,250.00 per month from the tenants.  The Debtor and Wells Fargo Bank have agreed that the value of the property is $340,000.

Priority of lien: First deed of trust.

Total amount of claim: $404,685 (per proof of claim No. 6)

IMPAIRED

Interest rate: 5.5% fixed

Monthly payment: $1,930.48 (principle and interest)

First payment date:   Payments pursuant to the Plan of Reorganization will begin on the first day of the month following the Effective Date, believed to be January 1, 2019.

Treatment: The Debtor will pay Wells Fargo Bank $340,000, amortized at 5.5% over 30 years.  WFB will retain its lien until the secured claim is paid in full.  The order closing this case may include this language and may be recorded at the County Recorder's Office by the Debtor.   No new loan documents will be required, unless required by the lender.

The Debtor shall receive credit against the total allowed claim for all pre- or post-petition payments not accounted for in the schedules or by the proof of claim, if any, which total shall be decreased accordingly – the holder of this claim shall provide the Debtor or his counsel with a statement regarding the current balance due as reasonably requested.

Debtor may satisfy the allowed secured claim by selling or refinancing the collateral, which shall obligate the holder of the claim in this class to reconvey or release its deed of trust or other lien in conjunction with such transaction without further order of this Court.

The balance of the amount owed by the Debtor to Wells Fargo on its Class 2 claim will be treated as unsecured and paid with the unsecured class.

**RESNIK HAYES
MORADI LLP**

**Class 3**

Secured claim of: Select Portfolio Services (Bank of America and/or Bank of NY Mellon)

Property address or description of collateral: 14817 Delano Street, Van Nuys, CA 91402.  This is the Debtor's residential rental property. The property is occupied and the tenants are paying $2,200 per month, on a month-to-month basis.  The Debtor values this property at $285,000.

Priority of lien: First deed of trust.

Total amount of claim: $313,146 (per proof of claim No. 10)

IMPAIRED

Interest rate: 5.25% fixed

Monthly payment: $2,473.44

First payment date:   Payments pursuant to the Plan of Reorganization will begin on the first day of the month following the Effective Date, believed to be January 1, 2019.

Treatment:  The Debtor has reached a Plan Treatment Stipulation with Class 3 Bank of New York Mellon on the Delano property.  The Stipulation provides that the Debtor will make monthly payments of $2,473.44 broken down as $1,486.69, P&I, $123.17 insurance, and $863.58 arrearage.  A copy of the Stipulation is attached hereto as **Exhibit "F."**

The Debtor will pay SPS $285,000, amortized at 5.25% over 30 years.  SPS will retain its lien until the secured claim is paid in full.  The order closing this case may include this language and may be recorded at the County Recorder's Office by the Debtor. No new loan documents will be required, unless required by the lender.

The Debtor shall receive credit against the total allowed claim for all pre- or post-petition payments not accounted for in the schedules or by the proof of claim, if any, which total shall be decreased accordingly – the holder of this claim shall provide the Debtor or his counsel with a statement regarding the current balance due as reasonably requested.

**RESNIK HAYES
MORADI LLP**

Debtor may satisfy the allowed secured claim by selling or refinancing the collateral, which shall obligate the holder of the claim in this class to reconvey or release its deed of trust or other lien in conjunction with such transaction without further order of this Court.

The balance of the amount owed by the Debtor to SPS on its Class 3 claim will be treated as unsecured and paid with the unsecured class.

**Class 4**

Secured claim of: Nationstar/US Bank

Property address or description of collateral: 3768 Millbury Ave., Baldwin Park, CA 91706.  This is the Debtor's residential rental property.  The property is occupied by Juan Sanchez and Sylvia Rodriguez, who pay $1,650 per month, on a month-to-month basis.  The Debtor values this property at $308,000 based on an appraisal dated December 3, 2016.

Priority of lien: First deed of trust.

Total amount of claim: $283,669 (per proof of claim No. 7)

IMPAIRED

Interest rate: 5% fixed

Monthly payment: $1,523.00

First payment date:   Payments pursuant to the Plan of Reorganization will begin on the first day of the month following the Effective Date, believed to be January 1, 2019.

Treatment: The Debtor will pay Nationstar in full amortized at 5% over 30 years. Nationstar will retain its lien until the secured claim is paid in full.  The order closing this case may include this language and may be recorded at the County Recorder's Office by the Debtor.   No new loan documents will be required, unless required by the lender.

The Debtor shall receive credit against the total allowed claim for all pre- or post-petition payments not accounted for in the schedules or by the proof of claim, if any, which total shall be decreased accordingly – the holder of this claim shall provide the Debtor or

**RESNIK HAYES
MORADI LLP**

his counsel with a statement regarding the current balance due as reasonably requested.

Debtor may satisfy the allowed secured claim by selling or refinancing the collateral, which shall obligate the holder of the claim in this class to reconvey or release its deed of trust or other lien in conjunction with such transaction without further order of this Court.

The Debtor shall make adequate protection payments to Nationstar of $1,523.00 beginning in September, 2018 and continuing until the Plan is confirmed or further order of the court.

**Class 5**

Secured claim of: Nationstar/US Bank

Property address or description of collateral: 7738 Ben Ave, North Hollywood, CA 91605.  This is the Debtor's residential rental property. The property is occupied by Mason and Rachel Harrison, who pay $1,675 per month.  The Debtor values this property at $315,000 based on an appraisal dated December 3, 2016.

Priority of lien: First deed of trust.

Total amount of claim: $302,036 (per proof of claim No. 5)

IMPAIRED

Interest rate: 5.25% fixed

Monthly payment: $1,621.00

First payment date:    Payments pursuant to the Plan of Reorganization will begin on the first day of the month following the Effective Date, believed to be January 1, 2019.

Treatment: The Debtor will pay Nationstar in full, amortized at 5.25% over 30 years.  Nationstar will retain its lien until the secured claim is paid in full.  The order closing this case may include this language and may be recorded at the County Recorder's Office by the Debtor.   No new loan documents will be required, unless required by the lender.  If there should be a default, Nationstar shall give the Debtor notice of the default in writing with an email copy to counsel and allow ten (10) days for the Debtor to cure the

**RESNIK HAYES
MORADI LLP**

default.    If the default is not cured, Nationstar shall have relief from the automatic stay without any further court proceeding required and may proceed with its rights under the agreements and state law.

The Debtor shall receive credit against the total allowed claim for all pre- or post-petition payments not accounted for in the schedules or by the proof of claim, if any, which total shall be decreased accordingly – the holder of this claim shall provide the Debtor or his counsel with a statement regarding the current balance due as reasonably requested.

Debtor may satisfy the allowed secured claim by selling or refinancing the collateral, which shall obligate the holder of the claim in this class to reconvey or release its deed of trust or other lien in conjunction with such transaction without further order of this Court.

**Class 6**

Secured claim of: Wells Fargo Bank

Property address or description of collateral: 16920 Maclaren Street, La Puente, CA 91744.  This is residential rental property.  The property is currently vacant but the Debtor believes that he can have it rented for $2,000.  The Debtor believes the cost to remediate the property will be about $20,000.   The Debtor and Wells Fargo Bank have agreed on value of this property of $225,000.

Priority of lien: First deed of trust.

Total amount of claim: $336,592 (per proof of claim No. 11)

IMPAIRED

Interest rate: 5.5% fixed

Monthly payment: $1,349.99

First payment date:   Payments pursuant to the Plan of Reorganization will begin on March 1, 2018 pursuant to the Stipulation.

Treatment: The Debtor will pay WFB $225,000, amortized at 6.0% over 30 years. The Debtor will pay all property insurance and taxes.  WFB will retain its lien until the

**RESNIK HAYES**
**MORADI LLP**

secured claim is paid in full.  The order closing this case may include this language and may be recorded at the County Recorder's Office by the Debtor.   No new loan documents will be required, unless required by the lender.

The Debtor shall receive credit against the total allowed claim for all pre- or post-petition payments not accounted for in the schedules or by the proof of claim, if any, which total shall be decreased accordingly – the holder of this claim shall provide the Debtor or his counsel with a statement regarding the current balance due as reasonably requested.

Debtor may satisfy the allowed secured claim by selling or refinancing the collateral, which shall obligate the holder of the claim in this class to reconvey or release its deed of trust or other lien in conjunction with such transaction without further order of this Court.

The balance of the amount owed by the Debtor to WFB its Class 6 claim will be treated as unsecured and paid with the unsecured class.

**Class 7**

Secured claim of: PROF-2013-S3 Legal Title Trust IV, by U.S. Bank National Association as Legal Title Trustee ("Fay Servicing").

Property address or description of collateral: 16442 Inyo Street, La Puente, CA 91744.  This is residential rental property.  The property is currently vacant but the Debtor believes that he can have it rented for $2,350 within a few months.  The Debtor believes the cost to remediate the property will be about $20,000.  The Debtor and Fay Servicing have entered into a Stipulation re Plan Treatment which is attached hereto as **Exhibit "E."** They agreed on a value of this property of $315,000.

Priority of lien: First deed of trust.

Total amount of claim: $349,805 (per proof of claim No. 8)

IMPAIRED

Interest rate: 5.5% fixed

Monthly payment: $1,789

**RESNIK HAYES
MORADI LLP**

First payment date:   Payments pursuant to the Plan of Reorganization will begin on the first day of the month following the Effective Date, believed to be July 1, 2018.

Treatment: The Debtor will pay Fay Servicing $315,000, amortized at 5.5% over 30 years.  The Debtor will pay all property insurance and taxes.  The lender will retain its lien until the secured claim is paid in full.  The order closing this case may include this language and may be recorded at the County Recorder's Office by the Debtor.   No new loan documents will be required, unless required by the lender.  The terms of the Stipulation shall be incorporated into the Plan of Reorganization as if set forth in full.

The Debtor shall receive credit against the total allowed claim for all pre- or post-petition payments not accounted for in the schedules or by the proof of claim, if any, which total shall be decreased accordingly – the holder of this claim shall provide the Debtor or his counsel with a statement regarding the current balance due as reasonably requested.

Debtor may satisfy the allowed secured claim by selling or refinancing the collateral, which shall obligate the holder of the claim in this class to reconvey or release its deed of trust or other lien in conjunction with such transaction without further order of this Court.

The balance of the amount owed by the Debtor to the lender on its Class 7 claim will be treated as unsecured and paid with the unsecured class.


**Class 8**

Secured claims of:  Los Angeles County Tax Collector

Property address or description of collateral: Properties located in Los Angeles County

Priority of lien: property taxes

Total amount of claim: $31,790 (per Proof of Claim No. 2)

UNIMPAIRED

Interest rate: per statute

Monthly payment: N/A

**RESNIK HAYES
MORADI LLP**

First payment date:  N/A

Treatment:  The property taxes on the Debtor's properties in Los Angeles County are current.  He will continue to pay the claims as they come due in the ordinary course. Most if not all of the property taxes are paid from escrow accounts held by the various mortgage companies and or servicers.  If any property taxes are otherwise owed by the Debtor, he will pay those in full in monthly installments plus interest at the governmental rate over a 60 month period beginning with the petition date.

**Class 9**

Unsecured Creditors

The Debtor' unsecured creditors total approximately $295,000.  This includes the unsecured portions of the secured claims as follows:  A complete list of the creditors of the estate is attached hereto as **Exhibit "D."**

| Class 2, Weidner | Wells Fargo Bank | 64,685 |
| --- | --- | --- |
| Class 3, Delano | SPS | 28,146 |
| Class 6, Maclaren | Wells Fargo Bank | 111,592 |
| Class 7, Inyo | Wells Fargo Bank | 35,000 |
| Total | | 239,423 |

Upon entry of the discharge, the claims of each of the creditors addressed in Classes 2, 3, 6 and 7 shall be reduced to the respective amount detailed in that particular Class' treatment above.  The Order Granting Discharge shall include this language and may be recorded at the County Recorder's Office by the Debtor.

The unsecured class will be paid $48,000 over 48 months beginning on the first day of the 13th month after the Effective Date.

If the Debtor can sell or refinance his home (the Kester property) at any time during the life of the Plan, he will pay the unsecured class any unpaid amount up to $48,000, and

**RESNIK HAYES
MORADI LLP**

seek an early discharge of his debt from the Bankruptcy Court.

1

2

3    **Class 10:** Debtor's Interest

The Debtor will retain his interest in his property.

4

5

6    ### F.  **MEANS OF PERFORMING THE PLAN**

7    *i.    Funding for the Plan*

The Debtor will fund the Plan from his rental and his employment income.  See the projections and analysis attached to the Disclosure Statement as **Exhibit "B."**

8

9

10    *ii.  Management of the Reorganized Debtor*

11    1)    Identity:  The Debtor.

12    2)    Post-confirmation Managerial duties: The Debtor will continue to manage his affairs.

13

14    3)    Amount of compensation paid pre-petition and to be paid post-confirmation: The Debtor reserves the right to modify his living expenses and to invest sufficient funds into his rental properties to ensure the rental properties at least break-even and to invest in necessary goods and operating expenses for his business to break-even and thrive while making his Chapter 11 plan payments.

15

16

17

18

19    4)    Description of expertise:  The Debtor ably managed his businesses prior to the national economic depression, credit availability and real estate crises that have impacted his earnings.

20

21

22    *iii. Disbursing Agent*

23    Debtor shall act as the disbursing agent for the purpose of making the distributions to all classes provided for under the Plan.  He shall not be compensated.

24

25

26    *iv. Distributions*

27    Cash payments made pursuant to the Plan shall be in U.S. dollars by checks drawn

28

**RESNIK HAYES
MORADI LLP**

on domestic bank selected by the Disbursing Agent.

Any distributions under the Plan that are unclaimed or undeliverable for a period of six (6) months after distribution thereof shall be revested in the Reorganized Debtor, free of any restrictions thereon, and any entitlement of any holder of any claim to such distribution shall be extinguished and forever barred.

## E.  TREATMENT OF MISCELLANEOUS ITEMS

### A) EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**1)  Assumptions**

The Debtor will assume all of the leases he has with his tenants.  Debtor reserves the right to modify the Plan to designate additional contracts or leases to be assumed or to be rejected at any time prior to the hearing on Confirmation of the Plan.  On the Effective Date, each of the unexpired leases and executory contracts so designated shall be assumed as obligations of the Debtor.  The Confirmation Order shall constitute an Order approving the assumption of each lease and contract.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, or contend that there are arrearages, you must file and serve your objection to the Plan, and set forth the arrearages within the deadline for objecting to the confirmation of the Plan.

**2)  Rejections**

Any unexpired lease or executory contract not expressly rejected shall be deemed assumed as of the Effective Date.  The Debtor reserves the right to modify the Plan to designate certain contracts or leases for rejection at any time prior to the hearing on confirmation of the Plan.

The order confirming the Plan shall constitute an order approving the rejection of such leases and contracts.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.  See Disclosure Statement for the specific date.

**RESNIK HAYES
MORADI LLP**

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM

ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS THIRTY DAYS

AFTER THE EFFECTIVE DATE.  Any claim based on the rejection of an executory

contract or unexpired lease will be barred if the proof of claim is not timely filed, unless

the Court later orders otherwise.

### B) **REGULATORY COMMISSION APPROVAL**

Not applicable, Debtor is an individual.

### C) **RETENTION OF JURISDICTION.**

The Court will retain jurisdiction over this bankruptcy case until a final decree is

entered by the Court.  It is estimated that the final decree will be entered approximately six

(6) months after the Plan is confirmed by the Court.  At that time the bankruptcy case will

be closed.

## F.  **EFFECT OF CONFIRMATION OF PLAN**

### 1. **DISCHARGE**

Confirmation of the Plan does not discharge any debt provided for in the Plan until

the court grants a discharge on completion of all payments under the Plan, or as otherwise

provided in § 1141(d)(5) of the Code.  However, any liability imposed by the Plan will not

be discharged.

### 2. **REVESTING OF PROPERTY IN DEBTOR**

Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of

the property of the estate in the Debtor.

From and after the Effective Date, the Debtor may operate and may use, acquire,

and dispose of property, and compromise and settle any claims or causes of actions

without supervision or consent of the Bankruptcy Court and are free of any restrictions of

the Bankruptcy Code or Bankruptcy Rules.

Debtor shall have, retain, reserve and be entitled to assert all claims, causes of

**RESNIK HAYES
MORADI LLP**

action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the Petition Date as fully as if the Debtor's bankruptcy case had not been commenced; and all of the Debtor's legal and equitable rights respecting any such claim which is not specifically waived, extinguished, relinquished or transferred by the Plan may be asserted after the Effective Date.

### 3. **MODIFICATION OF PLAN**

Debtor may modify the Plan pursuant to 11 U.S.C. §1127.

### 4. **DEFAULT**

As those claimants whose claims are not agreed upon by the parties (i.e., memorialized in a plan treatment stipulation), if Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than twenty-one (21) days after the time specified in the Plan, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default.  Debtor is in material default under the Plan if he fails within twenty-one (21) days of the service of such notice of default, plus three (3) additional days if served by mail, either; (i) to cure the default or (ii) to obtain from the Court an extension of time to cure the default or a determination that no default occurred.

### 5. **POST-CONFIRMATION STATUS REPORT**

Pursuant to Local Bankruptcy Rule 3020, within one hundred and twenty (120) days following the entry of the Plan Confirmation Order, a reorganized debtor is to file a status report with the Court explaining what progress has been made toward consummation of a confirmed plan.

Debtor shall do so *unless* the Court sets a post confirmation status conference, at which point he will instead file a post confirmation status report (which contains all the information required by LBR 3020) by the deadline set by the Court, or at least fourteen

**RESNIK HAYES
MORADI LLP**

[14] days prior to the hearing if no deadline is specified.

## 6.  **QUARTERLY FEES**

Reorganized Debtor shall be responsible for the timely payment of all fees incurred after the Effective Date pursuant to 28 U.S.C. § 1930(a)(6).

## 7.  **POST-CONFIRMATION EMPLOYMENT**

After the entry of the order of confirmation of the Plan, Reorganized Debtor may employ, without notice, hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals (the "Post-confirmation Professionals") as he may desire to render services on such terms as he deems reasonable.  With respect to services rendered by the Post-confirmation Professionals, Reorganized Debtor shall be authorized to pay for such services, related costs, and expenses without notice, hearing, or order of the Bankruptcy Court.

## 8.  **POST-CONFIRMATION CONVERSION/DISMISSAL**

A creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances.  The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within one hundred and eighty (180) days after the entry of the order of confirmation.

**RESNIK HAYES
MORADI LLP**

### 9. **FINAL DECREE**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, Reorganized Debtor shall file a motion with the Court to obtain a final decree to close this case.

Dated:  October 5, 2018          By:          SEE NEXT PAGE
_____
Samuel James Esworthy
*Debtor and Plan Proponent*

Dated:  October 5, 2018          By:          **/s/ M. Jonathan Hayes**
_____
M. Jonathan Hayes
*Attorneys for Plan Proponent*

**RESNIK HAYES
MORADI LLP**

## 9. **FINAL DECREE**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, Reorganized Debtor shall file a motion with the Court to obtain a final decree to close this case.

Dated:  October 3, 2018              By:     _Samuel James Esworthy_
                                                      _____
                                                      Samuel James Esworthy
                                                      *Debtor and Plan Proponent*


Dated:  October 3, 2018              By:     **/s/ M. Jonathan Hayes**
                                                      _____
                                                      M. Jonathan Hayes
                                                      *Attorneys for Plan Proponent*

**RESNIK HAYES
MORADI LLP**

23

# EXHIBIT D

| Creditor | Scheduled Amount | C/U/D | Filed Claim | Filed Claim Amnt. | Allowed Amt | Allowed Amt | Allowed Amt | Comments |
|---|---|---|---|---|---|---|---|---|
| | AMT* | | CLAIM # | AMT* | Secured | Unsecured | Priority | |
| **Secured** | | | | | | | | |
| Bank of America | $341,035 | | 10 | $313,146 | $313,146 | | | 14817 Delano Street, Van Nuys, CA 91402 |
| Bank of New York Mellon | $485,847 | | | | | | | No Proof of Claim. 13739 & 13741 Louvre Street, Pacoima, CA 91331 |
| Los Angeles County Tax Collector | $0 | | 2 | $31,790 | $31,790 | | | |
| U.S. Bank | $272,111 | | 5 | $302,036 | $302,036 | | | 7738 Ben Avenue, North Hollywood, CA 91605 |
| U.S. Bank | $248,845 | | 7 | $283,669 | $283,669 | | | 3768 Millbury Avenue, Baldwin Park, CA 91706 |
| Wells Fargo Bank | $330,280 | | 3 | $356,724 | $356,724 | | | 18343 Renault Street, La Puente, CA 91744 |
| Wells Fargo Bank | $357,119 | | 6 | $404,685 | $404,685 | | | 13038 Weidner Street, Pacoima, CA 91331 |
| Wells Fargo Bank | $311,513 | | 11 | $336,592 | $336,592 | | | 16920 Maclaren Street, La Puente, CA 91744 |
| Wells Fargo Bank | $323,702 | | 8 | $349,805 | $349,805 | | | 16442 Inyo Street, La Puenete, CA 91744 |
| **Priority** | | | | | | | | |
| FTB | $0 | | 4 | $11,068 | | | $0 | Will be amended to reflect no balance |
| IRS | $12,608 | | 1 | $23,079 | | | $0 | Will be amended to reflect no balance |
| **Unsecured** | | | | | | | | |
| Caine & Weiner | $130 | | | | | $130 | | |
| Caine & Weiner | $61 | | | | | $61 | | |
| Chase | $36,798 | | | | | $36,798 | | |

**Samuel James Esworthy- Schedule of Debts**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Chase | $12,050 | | | | | $12,950 | |
| Dell Financial Services | $1,200 | | | | | $1,200 | |
| Discover Financial | $5,236 | | | | | $5,236 | |
| The Feldman Law Firm | $0 | | | | | $0 | |
| | | | | | | | |
| | | | | | | | |

# EXHIBIT E

1  CHRISTOPHER M. MCDERMOTT (SBN 253411)
   cmcdermott@aldridgepite.com
2  TODD S. GARAN (CA SBN 236878)
   tgaran@aldridgepite.com
3  **ALDRIDGE PITE, LLP**
   4375 Jutland Dr., Ste. 200
4  P.O. Box 19734
   San Diego, CA 92177-9734
5  Telephone: (858) 750-7600
   Facsimile:  (619) 590-1385
6
   Attorneys for Secured Creditor:
7  PROF-2013-S3 Legal Title Trust IV
   by U.S. Bank National Association, as Legal Title Trustee
8  (as successor in interest to Wells Fargo Bank, N.A.)

9
                    **UNITED STATES BANKRUPTCY COURT**
10
       **CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION**
11

12  In re                                  Case No. 1:16-bk-11985-MT

13  SAMUEL JAMES ESWORTHY,                  Chapter  11

14            Debtor and Debtor in         **STIPULATION RE: TREATMENT OF
              Possession.**                 **CREDITOR'S CLAIM UNDER
15                                          DEBTOR'S PROPOSED CHAPTER 11
                                            PLAN OF REORGANIZATION**
16
                                           **Subject Property**:
17                                         *16442 Inyo Street*
                                           *La Puente, CA  91744*
18
                                           **Continued Confirmation Hearing Date**
19                                         Date:      November 29, 2017
                                           Time:      9:30 a.m.
20                                         Rm:        302
                                                      21041 Burbank Blvd.
21                                                    Woodland Hills, CA 91364
                                           Judge:     Hon. Maureen Tighe
22

23         This Stipulation Re: Treatment of Creditor's Claim ("**Stipulation**") is entered into by and

24  between Secured Creditor, PROF-2013-S3 Legal Title Trust IV, by U.S. Bank National Association,

25  as Legal Title Trustee (as successor in interest to Wells Fargo Bank, N.A.); Fay Servicing, LLC. as

26  servicer ("**Creditor**"), and Debtor, Samuel James Esworthy (the "**Debtor**"), by and through their

27  respective attorneys of record.

28         The real property which is the subject of this matter is commonly known as 16442 Inyo

---

Claim Treatment Stipulation.v.1                                    Page - 1 -

Street, La Puente, CA 91744 (hereinafter the "**Subject Property**"), which is more fully described in

the Deed of Trust attached hereto as Exhibit B and incorporated herein by this reference.

*The Claim*:

The Loan is evidenced by a promissory note dated December 12, 2007, executed by Debtor

to Worlds Savings Bank, FSB ("**Lender**") in the principal sum of $287,000.00 (the "**Note**"), which

was made A copy of the Note is attached hereto as **Exhibit A** and incorporated herein by this

reference.

The Note is secured by a deed of trust (the "**Deed of Trust**") encumbering the Subject

Property. The Deed of Trust was duly recorded on December 17, 2007, in the Official Records of

Los Angeles County, State of California.  The Deed of Trust contains an Assignment of Rents

provision.  The Note and Deed of Trust may be referred to collectively herein as the "**Loan**."

Effective December 31, 2007, Lender's charter and bylaws were amended to change its name

to Wachovia Mortgage, FSB.  Further, effective November 1, 2009, Wachovia Mortgage FSB

converted to a national bank with the name Wells Fargo Bank Southwest, National Association.

Additionally, effective November 1, 2009, Wells Fargo Bank Southwest, National Association

merged with Wells Fargo Bank, National Association. (*See, POC 8*).  Subsequently, all of Lender's

interest in the Loan was assigned and transferred to Creditor.  The Note is endorsed in blank.

*Debtor's Bankruptcy Proceedings*:

On July 7, 2016, Debtor filed the instant bankruptcy petition under Chapter 11 of the

Bankruptcy Code in the U.S. Bankruptcy Court for the Central District of California – San Fernando

Valley Division, and was assigned Case No. 1:16-bk-11985-MT.

Wells Fargo Bank, N.A. filed a Proof of Claim against the Debtor's estate in the amount of

$349,805.08, secured by the Subject Property with $84,587.25 in pre-petition arrears.  A copy of

Wells Fargo's Proof of Claim may be found at this Court's Claims register as Claim Number 8.  On

August 28, 2017, Creditor filed its Transfer of Claim.  *See, Docket Number 197*.

On or about January 16, 2017, Debtor filed the Motion seeking to value the Subject Property

at $225,000.00.  *See, Docket Number 93.*

On February 15, 2017, Creditor filed an Opposition to Debtor's Motion to Value asserting a

1  value of $330,000.00. *See, Docket Number 116.*

2      On April 26, 2017, the continued hearing on Debtor's Motion to Value was held, and the

3  parties resolved said Motion to Value at $315,000, by stipulation on the record. However, to date,

4  no Order on the Motion to Value has been entered.

5      On February 8, 2017, Debtor filed his Chapter 11 Disclosure Statement ("**Disclosure**

6  **Statement**") and on February 14, 2017, his Chapter 11 Plan ("**Plan**"). *See, Docket Numbers 108*

7  *and 114, respectively.* Creditor's claim is identified as a Class 7 Impaired Secured Claim of Wells

8  Fargo Bank.

9      On July 21, 2017, Creditor filed an Objection ("**Objection**") to Debtor's Plan. *See, Docket*

10 *Number 187.* On September 1, 2017, Creditor filed its Supplemental Objection ("**Sup Objection**")

11 to Debtor's Plan. *See, Docket Number 204.*

12      The hearing on Confirmation of Debtor's Chapter 11 Plan has been continued to November

13 29, 2017 at 9:30 a.m. in the above entitled Court. *See, Docket Number 207.*

14      On August 31, 2017, Creditor filed a Motion for Relief from the Automatic Stay ("**Motion**

15 **for Relief**") with respect to the Subject Property, which is currently scheduled for hearing on

16 September 27, 2018 at 11:00 a.m. in the above entitled Court. *See, Docket Number 200.*

17 **THE PARTIES STIPULATE AS FOLLOWS**:

18      1.      Valuation of Subject Property. The parties agree that the value of the Subject

19 Property for purposes of this Stipulation and Debtor's Chapter 11 Plan, which shall be $315,000.00.

20 Debtor shall be required to file an order on his Motion to Value the Subject Property consistent with

21 this Stipulation.

22      2.      Secured Claim. Creditor (its successors or assigns) shall have a fully secured claim in

23 the amount of **$315,000.00** to be amortized over 30 years at a fixed interest rate of 5.5% per annum

24 (the "**Secured Claim**").

25      3.      Unsecured Claim. Creditor shall have an unsecured claim in the amount of

26 $41,724.04, plus Creditor's post-petition attorneys' fees and costs associated with Debtor's case (the

27 "**Unsecured Claim**"). Creditor shall receive, in full and final satisfaction of its Unsecured Claim, its

28 pro rata share of the dividend issued to general unsecured creditors under Debtor's Chapter 11 Plan,

1  as amended

2      4.    <u>Payments on Secured Claim</u>.  Debtor shall tender regular monthly principal and

3  interest payments to Creditor (and/or its servicer) in the amount of $1,788.54, commencing on the

4  first day of the first month following entry of an Order Confirming Debtor's Chapter 11 Plan, or on

5  the first day of the first month in which Debtor is able to rent the Subject Property, which ever

6  occurs first ("**Payment Start Date**").    Payments on the Secured Claim shall commence on the

7  Payment Start Date and continue on the first day of each month thereafter for a period of 359 months

8  when all outstanding amounts owed on the Secured Claim, including any escrow payments and/or

9  charges as required per the terms and provisions of this Stipulation and/or the Loan are to be paid in

10  full ("**Maturity Date**").

11      5.    <u>Payment of Property Taxes and Insurance</u>.  **Effective immediately**, Debtor is

12  required to pay any and all property taxes for the Subject Property when due and obtain and maintain

13  real property insurance for the Subject Property that is also in accordance with any requirements set

14  forth in the Deed of Trust.  Debtor agrees to provide Creditor (and/or its servicer) proof of said

15  insurance within 5 business days of executing this Stipulation, and upon reasonable request to verify

16  compliance with this Stipulation.  In the event Debtor fails to timely pay any property taxes or

17  maintain insurance as required hereunder, then Creditor (and/or its servicer) may, in accordance with

18  the Loan documents and applicable non-bankruptcy law, and its sole discretion: 1) pay the property

19  taxes and/or obtain insurance for the Subject Property and thereafter require Debtor to tender

20  monthly escrow payments to reimburse Creditor (and/or its servicer) for any and all real property

21  taxes and/or insurance advances made by Creditor (and/or its servicer) for the Subject Property;

22  and/or 2) treat any such failure to pay the property taxes when due and/or maintain insurance for the

23  Subject Property as required hereunder a default of this Stipulation.  In the event Creditor (and/or its

24  servicer) requires Debtor to tender escrow payments for property taxes and/or insurance as required

25  hereunder, Debtor shall tender such escrow payments on the first day of each month thereafter along

26  with the regular monthly payment required by paragraph 4 of this Stipulation until the Maturity Date

27  under the Loan at which time the Secured Claim and any outstanding escrow advances are to be paid

28  in full.

6.     <u>Pre-Confirmation Default</u>: In the event of any default on any of the provisions of this Stipulation prior to confirmation of Debtor's Chapter 11 Plan, Creditor (and/or its servicer) shall provide written notice, via certified mail, to Debtor at the Subject Property and to Debtor's attorney of record, indicating the nature of default. If Debtor fails to cure the default, or payment default with certified funds after the passage of fifteen (15) calendar days from the date said written notice is placed in the mail as reflected on the certified receipt, Creditor may file and serve a declaration under penalty of perjury specifying the default, together with a proposed order Terminating the Automatic Stay, which the Court may grant without further notice or hearing, and Creditor (and/or its servicer) may commence any and all action necessary to obtain complete possession of the Subject Property under the terms of the Loan and applicable state law, including but not limited to foreclosure thereof, without further notice, order, or proceeding of this Court.  In the event that Creditor is granted relief from the Automatic Stay, the parties hereby stipulate that the 14-day stay provided by Bankruptcy Rule 4001(a)(3) is waived.

7.     <u>Post-Confirmation Default</u>.  Upon confirmation of Debtor's Chapter 11 Plan, the Automatic Stay shall be deemed terminated in all respects as to Debtor and Debtor's estate, and Creditor will no longer be required to comply with paragraph 6 above in the event of default. Instead, Creditor (and/or its servicer) will provide Debtor notice of any default related to the Stipulation in accordance with the Loan, and applicable state law and/or proceed with its remedies under the terms of the Loan and applicable state law, including but not limited to foreclosure of the Subject Property, without further notice, order, or proceeding of this Court.

8.     Any forbearance by Creditor (and/or its servicer) in exercising any right or remedy, including, without limitation, Creditor (and/or its servicer) accepting payments from third persons, entities or successors in interest to Debtor, or in amounts less than the amount due, including as provided for under this Stipulation, shall not be a waiver of or preclude the Creditor's (and/or servicer) exercise of any right or remedy, or act as a waiver of Creditor's right to proceed hereunder or under the Loan.

9.     In the event the Debtor defaults under this Stipulation and Creditor (and/or its servicer) forwards a default letter to Debtor, Debtor shall be required to tender Creditor's reasonable

1  attorneys' fees and costs for each default letter submitted, in addition to the default amount stated

2  therein, in order to cure the default. Any notice of default that Creditor (and/or its servicer) provides

3  Debtor and/or Debtor's attorneys pursuant to this Stipulation shall not be construed as a

4  communication under the Fair Debt Collection Practices Act, 15 U.S.C. §1692.

5          10.     Except as otherwise expressly provided for herein, all remaining terms of the Loan,

6  which are incorporated herein by this reference, shall govern the treatment of Creditor's Secured

7  Claim.

8          11.     Except as expressly provided herein, the Debtor waives any and all claims, causes of

9  action, whether known or unknown, he currently has against Creditor, and its respective agents,

10  parents, affiliates, subsidiaries, attorneys, predecessors, current and subsequent holders of the Loan,

11  successors and assigns in relation to the Loan referenced herein and any and all agreements which

12  exist between them regarding or relating to the Loan prior to the date of this Stipulation. This waiver

13  includes Debtor's right to object to Creditor's Claim. The Debtor also releases Creditor and its

14  respective agents, parents, affiliates, subsidiaries, attorneys, predecessors, current and subsequent

15  holders of the Loan, successors and assigns from any liability in relation to the Loan prior to the date

16  of this Stipulation.

17          12.     In the event the Debtor seeks to sell the Subject Property at anytime prior to

18  confirming his Chapter 11 Plan, or if Debtor seeks to sell the Subject Property through his Chapter

19  11 Plan, Creditor shall be entitled to credit bid at any such sale in an amount not less than the full

20  unmodified, original outstanding balance owing under the terms of the Loan and/or exercise any of

21  its rights pursuant to 11 U.S.C. §§ 363(b), (f), (k) or 1129(b)(2)(A)(ii) as applicable, and shall be

22  permitted to receive proceeds from the sale of the Subject Property in an amount not less than the

23  full unmodified, original outstanding balance owing under the terms of the Loan at said time.

24          13.     In the event the Debtor asserts that Creditor has failed to properly update its internal

25  system to comply with the terms of this Stipulation within a reasonable period of time after an order

26  is entered confirming the Debtor's Chapter 11 Plan of Reorganization, which shall be not less than

27  ninety (90) days, the Debtor shall be required to provide written notice of the alleged lack of

28  compliance to Creditor and Creditor's counsel of record, currently, Aldridge Pite, LLP at 4375

Jutland Drive, Suite 200, San Diego, CA 92117, indicting the nature of the alleged lack of compliance. If Creditor fails to either remedy the alleged lack of compliance and/or provide an explanation refuting the Debtor's allegation after the passage of ninety (90) days from the date Creditor receives said written notice (the "**Meet and Confer Period**"), Debtor may proceed with filing the appropriate motion in bankruptcy court seeking Creditor's compliance.

14.    Debtor shall be required to attach a copy of this Stipulation and any order thereon as an exhibit to any Chapter 11 Plan filed in this case, including any modifications or amendments thereto, and said Plan (including any modification and/or amendments thereto) shall expressly and fully incorporate by reference the terms and provisions of this Stipulation.  In the event the Court does not require Debtor to file an Amended Plan subsequent to this Stipulation and prior to Confirmation of the Plan, then Debtor shall be required to attach  a copy of the Stipulation (without internal exhibits) to the Confirmation Order as an Exhibit and incorporate the same by reference.  In the event of a conflict between a provision of Debtor's Plan and this Stipulation, the Stipulation shall control.  Further, the terms and provisions of this Stipulation may not be modified, altered, or changed by the Chapter 11 Plan, any subsequently filed amended or modified Chapter 11 Plan of Reorganization and/or confirmation order on the foregoing without the express written consent of the Creditor by way of a subsequent stipulation filed with and approved by the Court.

15.    In the event the Debtor's case is dismissed or converted to any other chapter under Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full, unmodified pre-confirmation amount due under the Loan, less any payments received to such date and the Automatic Stay shall be terminated without further notice, order or proceeding of the Court.

16.    In exchange for the forgoing, and upon the Court's approval of this Stipulation, Creditor's Objection [*Docket Number 187*] and its Sup Objection [*Docket Number 204*] shall be deemed withdrawn, subject to the terms and provisions of the Stipulation, and Creditor shall provide a ballot voting in favor of the Debtor's Chapter 11 Plan of Reorganization for the Secured Claim and Unsecured Claims.

/././

/././

1    ./././

2       17.    The parties also agree that upon entry of the Court's order approving this Stipulation,

3    Creditor's Motion for Relief [*Docket Number 201*], shall be deemed resolved, and Creditor will file

4    a Notice of Withdrawal.

5

6    Dated: _____, 2017        SIMON RESIK HAYES, LLP.

7

8                                      By: _____

9                                            Roksana D. Moradi
                                        M. Jonathan Hayes
                                        Attorneys for Debtor

10

11    Dated: 9/21/ _____, 2017        ALDRIDGE PITE, LLP

12

13                                      By: _____
                                        Todd S. Garan

14                                          Attorneys for Creditor

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/././

17.    The parties also agree that upon entry of the Court's order approving this Stipulation, Creditor's Motion for Relief [*Docket Number 201*], shall be deemed resolved, and Creditor will file a Notice of Withdrawal.

Dated: ___9/21___, 2017          SIMON RESIK HAYES, LLP.

                                 By: _____
                                     Roksana D. Moradi
                                     M/Jonathan Hayes
                                     Attorneys for Debtor

Dated: _____, 2017          ALDRIDGE PITE, LLP

                                 By: _____
                                     Todd S. Garan
                                     Attorneys for Creditor

# EXHIBIT A

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

## PICK-A-PAYMENT<sup>sm</sup> LOAN

### WACHOVIA AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.**

LOAN NUMBER: ██████                     DATE: **December 12, 2007**

BORROWER(S): **SAMUEL J ESWORTHY, AN UNMARRIED MAN**   sometimes called "Borrower" and sometimes simply called "I" or "me."

PROPERTY ADDRESS: **16442 INYO ST, LA PUENTE, CA  91744-5536**

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$287,000.00** , called "Principal," plus interest, and any other charges incurred during the course of the loan, to the order of the Lender. The Lender is **WORLD SAVINGS BANK, FSB, a FEDERAL SAVINGS BANK, ITS SUCCESSORS AND/OR ASSIGNEES**, or anyone to whom this Note is transferred.

### 2.  INTEREST

**(A)   Interest Rate**

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at the yearly rate of **7.880%**. The interest rate I will pay  may change as described in this Section 2. Interest will be charged on the basis of a twelve month year and a thirty day month.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**(B)   Interest Change Dates**

The interest rate I will pay may change on the **1st** day of **February, 2008** and on the same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date." The new rate of interest will become effective on each Interest Change Date.

**(C)   Interest Rate Limit**

My lifetime maximum interest rate limit is **12.250%**, called "Lifetime Rate Cap."



**EXHIBIT A**



**(D) Index**

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The Index is the "Cost of Savings Index" as published by Wachovia Corporation. The Cost of Savings Index is the weighted average of the interest rates in effect as of the last business day of each calendar month on the U.S. dollar denominated personal time deposits (as defined by the Board of Governors of the Federal Reserve System for purposes of reporting deposits on FR 2900 by commercial banks) held by the U.S. branches and non-U.S. branches located on U.S. military facilities of the depository institution subsidiaries of Wachovia Corporation that hold federally insured deposits.

For this purpose, a business day is any calendar day other than Saturday, Sunday, or any legal holiday for national banks.

The Index will be published monthly by Wachovia Corporation, on or before the fifteenth day of each month, and made readily available. The most recent Index figure available on each Interest Change Date is called the "Current Index."

If an Index is substituted pursuant to section 2(F) of this Note, the alternate index will become the Index.

**(E) Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **3.000** percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new interest rate until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, "carryover" or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F) Alternate Index**

The Lender may choose an alternate index if the Index is no longer available. For purposes of this Section 2(F), the Cost of Savings Index or an alternate index is no longer available if:

(1) The Lender, in its sole discretion, determines that (a) the Board of Governors of the Federal Reserve System has made a material change in the definition of personal time deposits or time deposits for purposes of reporting deposits on FR 2900 or a comparable successor report; or (b) the Index is otherwise calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or

(2) Applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note.

The selection of an alternate index shall be at Lender's sole discretion. The alternate index may be a national or regional index or another type of index accepted or approved by the Lender's primary regulator. The Lender will give me notice of the alternate index.

**3. PAYMENTS**

**(A) Time and Place of Payments**

I will pay Principal and interest by making payments every month.

I will make my monthly payments on the **1st** day of each month beginning on **February 1, 2008**. I will make these payments every month until I have paid (i) all the Principal and interest; and (ii) any other charges described below that I may owe under this Note; and (iii) any charges that may be due under the Security Instrument. If, on **January 1, 2038**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1901 HARRISON STREET, OAKLAND, CALIFORNIA 94612** or at a different place if required by notice from the Lender.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. **$ 1,171.66**. This amount will change as described in Sections 3(C) and 3(D) below. My initial monthly payment amount was selected by me from a range of initial payment amounts approved by Lender and may not be sufficient to pay the entire amount of interest accruing on the unpaid Principal balance.

**(C) Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the **1st** day of **February, 2009** and on that day every **12th** month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Payment Changes**

Subject to Sections 3(F) and 3(G), on the Payment Change Date my monthly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, together with interest at the interest rate in effect on the day of calculation by the Maturity Date. However, the amount by which my payment can be increased will not be more than 7-1/2% of the then existing Principal and interest payment. This 7-1/2% limitation is called the "Payment Cap." The Lender will perform this Payment Change calculation at least 60 but not more than 90 days before the Payment Change Date.

**EXHIBIT A**

**(E)   Deferred Interest; Additions to My Unpaid Principal**

From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due. If this occurs, the amount of interest that is not paid each month, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)   Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid principal balance can never exceed **125%** of the Principal I originally borrowed, called "Principal Balance Cap." If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my monthly payment is due, I will instead pay a new monthly payment. Notwithstanding Sections 3(C) and 3(D) above, I will pay a new monthly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments.

**(G)   Payment Cap Limitation; Exceptions**

Beginning with the **10th** Payment Change Date and every 5th Payment Change Date thereafter, my monthly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply. Additionally, the Payment Cap limitation will not apply on the final Payment Change Date.

**(H)   Notice of Payment Changes**

The Lender will deliver or mail to me a notice of any changes in the amount of my monthly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law.

**4.   FAILURE TO MAKE ADJUSTMENTS**

If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time. I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

**5.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal before it is due is called a "Prepayment". When I make a Prepayment, I will tell the Lender in writing that I am doing so.  The Lender may require that any partial Prepayments be made on the date my regularly scheduled payments are due. If I make a partial Prepayment, there will be no changes in the due dates or amount of my regularly scheduled payments unless the Lender agrees to those changes in writing.  I may pay deferred interest on this Note at any time without charge and such payment will not be considered a "Prepayment" of Principal.  During the first 3 years of the loan term if I make one or more Prepayments that, in the aggregate, exceed $5,000 in any calendar month, I must pay a prepayment charge equal to 2% of the amount such Prepayments exceed $5,000 in that calendar month. After the first 3 years of the loan term, I may make a full or partial Prepayment without paying any prepayment charge.

**6.   MAXIMUM LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.   BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A)   Late Charges for Overdue Payments**

If the Lender has not received the full amount of any monthly payment by the end of **10** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **6.00%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.


**EXHIBIT A**



**(B)   Default**

I will be in default if (i) I do not pay the full amount of each monthly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C)   Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest that I owe on that amount, plus any other amounts due under the Security Instrument.

**(D)   No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full as described above, the Lender will still have the right to do so if I am in default at a later time.

**(E)   Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **8526 KESTER AVE, PANORAMA CITY, CA 91402-2723**, or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment, notice of dishonor, notice of acceleration, and protest. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE - ACCELERATION**

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26**:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.


**EXHIBIT A**

__Exception to Acceleration of Payment of Sums Secured.__ If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

      (i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

      (ii)   Lender approves the creditworthiness of the transferee in writing;

      (iii)  transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

      (iv)  an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of Principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

      (v)   the transferee executes an assumption agreement which is satisfactory to Lender.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

### 12. GOVERNING LAW; SEVERABILITY

__This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law."__ In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note.

### 13. CLERICAL ERRORS

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may result from any such error.

### 14. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS**

**EXHIBIT A**

SIGNATURE PAGE

**NOTICE TO BORROWER(S):**

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN
CIRCUMSTANCES. PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE
PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_Samuel J Esworth_ _____ (Seal)

SAMUEL J ESWORTHY

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER
WITH WELLS FARGO BANK SOUTHWEST, N.A. F/K/A
WACHOVIA MORTGAGE, FSB F/K/A WORLD SAVINGS
BANK, FSB

BY _Georgiana M Sieleni_

GEORGIANA M. SIELENI
VICE PRESIDENT LOAN DOCUMENTATION

(2004-03-1)      Page 6 of 6      CA

**EXHIBIT A**

# EXHIBIT B



## This page is part of your document - DO NOT DISCARD

 **20072760458**   Pages: 018

---

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/17/07 AT 08:00AM**

Fee:  121.00
Tax:  0.00
Other: 0.00

Total: 121.00

**Title Company**

---

# TITLE(S) :

L E A D    S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

   *E441853*      **THIS FORM IS NOT TO BE DUPLICATED**      

**EXHIBIT B**

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

**20072760458**

LOAN NUMBER: ███

NOTE AMOUNT: $287,000.00

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $358,750.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

---

I.      DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
      **(A)  Security Instrument.** This Deed of Trust, which is dated **December 12, 2007,** will be called the "Security Instrument "

      **(B)  Borrower.** SAMUEL J ESWORTHY, AN UNMARRIED MAN  sometimes will be called "Borrower" and sometimes simply "I" or "me."

      **(C)  Lender.** WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender " Lender is **a FEDERAL SAVINGS BANK,** which is organized and exists under the laws of the United States  Lender's address is **1901 Harrison Street, Oakland, CA 94612**



CA

DEFERRED INTEREST                    Page 1

**EXHIBIT B**

(D) **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U S **$287,000.00**, plus accrued and deferred interest and such other amounts as stated in the Note I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **January 1, 2038** ("Maturity Date")

(E) **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property "

(F) **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H) **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II.   BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust  I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to

(i)   pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender,

(ii)   pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender

## III.   DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below.

(i)   The Property which is located at **16442 INYO ST, LA PUENTE, CA  91744-5536**  The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)   All buildings and other improvements that are located on the Described Property;

DEFERRED INTEREST                                  Page 2                              CA

**EXHIBIT B**

(iii)   All rights in other property that I have as owner of the Described Property These rights are known as easements, rights and appurtenances attached to the Property,

(iv)   All rents or royalties and other income from the Described Property,

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property,

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property,

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section,

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future,

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section, and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

## IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that  (i) I lawfully own the Property, (ii) I have the right to grant and convey the Property to Trustee, and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have  I promise that I will defend my ownership of the Property against any claims of such rights

COVENANTS

I promise and I agree with Lender as follows·

## 1.   BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

## 2.   PAYMENTS FOR TAXES AND INSURANCE

### (A)   Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any)

 2004-03-3)                                                    CA

Page 3

**EXHIBIT B**

**(B)     Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any  These items are called "Escrow Items " Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U S C  § 2601 et seq  ("RESPA"), unless another law that applies to the Funds sets a lesser amount  If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount  Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise  Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds  Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law  If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage  I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

2004-03-3)

Page 4                                                                CA

**EXHIBIT B**

**3. APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes.

First, to pay prepayment charges due under the Secured Notes,

Second, to pay any advances due to Lender under this Security Instrument,

Third, to pay the amounts due to Lender under Paragraph 2 above,

Fourth, to pay interest due under the Secured Notes,

Fifth, to pay deferred interest due under the Secured Notes,

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien.** I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation, or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up, or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice

**5. BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

 (2004-03-3)

Page 5

CA

**EXHIBIT B**

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows  (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender  Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured  The 30-day period will begin when the notice is given

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above  However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender  Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

**6.    BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS**

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations  I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws  I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property  I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim  If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease  I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing

██████(2004-03-3)                                                                                        CA

Page 6

**EXHIBIT B**

**7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

**8.    LENDER'S RIGHT TO INSPECT THE PROPERTY**

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

**9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY**

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property, and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes

(2004-03-3)

CA

**10.  CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)  Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so

**(B)  Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured

**11.  OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together This means that any one of us may be required to pay all of the Sums Secured

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.  MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes

 (2004-03-3)                              CA

Page 8

EXHIBIT B

13.   **LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument

14.   **NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **8526 KESTER AVE, PANORAMA CITY, CA 91402-2723**  A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I (C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law

15.   **GOVERNING LAW; SEVERABILITY**

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.**  In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

16.   **BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

17.   **LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold, (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property, and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

**EXHIBIT B**

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

### 18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another  I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender  Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights  At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person  If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender

### 19.   CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

### 20.   LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

### 21.   WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes

### 22.   CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

### 23.   MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

### 24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that

(A)     If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

 (2004-03-3)

CA

EXHIBIT B

**(B)**   The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project, (ii) By-laws of the Owners Association, (iii) Code of regulations for the Project, (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association, (v) The Project's covenants, conditions and restrictions, (vi) Other equivalent documents

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above

**(C)**   If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

**(D)**   I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to  (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally, (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

## 25.   FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument



004-03-3)

CA

**EXHIBIT B**

### 26. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if.

(i) Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii) Lender approves the creditworthiness of the transferee in writing,

(iii) transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

(iv) an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v) the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

### 27. SUBSTITUTION OF TRUSTEE

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

 (2004-03-3)

Page 12

CA

**EXHIBIT B**

**28. RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law

Lender does not have to give me notice of a Breach of Duty  If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property

Lender will apply the proceeds from the sale of the Property in the following order  (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any, (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it

**29. RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law  If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable

**30. STATEMENT OF OBLIGATION**

Lender may collect a fee of $60 00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.


**EXHIBIT B**

**31.    ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly  This loan is called a "Quick Qualifying Loan " I have stated and I confirm that. (A) I do not have any other Quick Qualifying Loans with Lender, (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.    (  )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded, and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

 (2004-03-3)

Page 14

CA

**EXHIBIT B**

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records

### (PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

### BORROWER(S):

_____ (Seal)

SAMUEL J ESWORTHY

**ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT**

2004-03-1)                                    Page 15                                    CA

**EXHIBIT B**

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ } ss

On _December 12, 2007_ before me, _Roni Ozair-Hollander, Notary Public_
         Date                                                        Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Samuel J. Esworthy_ ,
                                              Name(s) of Signer(s)

☐ personally known to me
☒ proved to me on the basis of satisfactory evidence

```
RONI OZAIR-HOLLANDER
Commission # 1463188
Notary Public - California
Los Angeles County
My Comm. Expires Jan 16, 2008
```

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

——————————— **OPTIONAL** ———————————
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document _Deed of Trust_

Document Date _12-12-2007_          Number of Pages _15_

Signer(s) Other Than Named Above _____

## Capacity(ies) Claimed by Signer

Signer's Name _____

☐ Individual
☐ Corporate Officer — Title(s) _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

```
RIGHT THUMBPRINT
OF SIGNER

Top of thumb here
```

© 1999 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.nationalnotary.org          Prod. No. 5907          Reorder: Call Toll-Free 1-800-876-6827

**EXHIBIT B**



Order Number:
Page Number: 6

### EXHIBIT "A"

**LEGAL DESCRIPTION**

Real property in the City of LA PUENTE, County of LOS ANGELES, State of California, described as follows:

LOT 11 TRACT 21437 IN THE CITY OF LA PUENTE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 573 PAGE(S) 7 AND 8 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS AND OTHER HYDROCARBON, SUBSTANCES LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID PROPERTY, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEED RECORDED IN BOOK 48724 PAGE 13 OFFICIAL RECORDS.

APN: 8247-032-011

First American Title Lenders Advantage

# EXHIBIT B

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

4375 Jutland Drive/Suite 200/P.O. BOX 17933/San Diego, CA 92177

A true and correct copy of the foregoing document entitled (*specify*): Stipulation Re:Treatment of Creditor's Claim
Under Debtor's Proposed Chapter 11 Plan of Reorganization

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 09/22/2017          , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee, ustpregion16.wh.ecf@usdoj.gov

United States Trustee (represented by):  Katherine Bunker, kate.bunker@usdoj.gov

Attorney for Debtor: M Jonathan Hayes, jhayes@srhlawfirm.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*)    09/22/2017          , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Judge Maureen Tighe
Suite 324, Courtroom 302
21041 Burbank Boulevard
Woodland Hills, CA 91367

DEBTOR
Samuel James Esworthy
8526 Kester Avenue
Panorama City, CA 91402

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 09/22/2017 | Esteban Garcia | /s/ Esteban Garcia |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT F

JaVonne M. Phillips, Esq. SBN 187474
Kelly M. Raftery, Esq. SBN 249195
**McCarthy & Holthus, LLP**
1770 Fourth Avenue
San Diego, CA 92101
Phone (877) 369-6122
Fax (619) 685-4811

Attorneys for Secured Creditor, Bank of New York Mellon, f/k/a The Bank of New York, as trustee, on behalf of the holders of the Alternative Loan Trust 2006-OA2, Mortgage Pass Through Certificates Series 2006-OA2, its assignees and/or successors, by and through its servicing agent Select Portfolio Servicing, Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Samuel James Esworthy,<br>aka Samuel J. Esworthy,<br>aka S.J. Esworthy,<br>aka James Esworthy,<br>aka S. James Esworthy,<br><br>Debtor. | ) Case No.  1:16-bk-11985-MT<br>)<br>) Chapter 11<br>)<br>) **STIPULATION FOR ADEQUATE**<br>) **PROTECTION TO RESOLVE**<br>) **OPPOSITION TO MOTION TO**<br>) **CONTINUE THE AUTOMATIC STAY**<br>) **AND CHAPTER 11 PLAN TREATMENT**<br>) **WITH RESPECT TO FIRST LIEN**<br>) **SECURED BY REAL PROPERTY AT**<br>) **14817  DELANO STREET, LOS**<br>) **ANGELES, CA 91411**<br>)<br>) Hearing on Motion to Continue Stay:<br>) Date: 8/4/2016<br>) Time: 9:30 AM<br>) Courtroom: 302<br>) Location: 21041 Burbank Boulevard<br>)            Woodland Hills, CA 91367<br>)<br>) Judge:  Maureen Tighe<br>)<br>)<br>) |

1

**EXHIBIT 1**

1      Bank of New York Mellon, f/k/a The Bank of New York, as trustee, on behalf of the

2  holders of the Alternative Loan Trust 2006-OA2, Mortgage Pass Through Certificates Series

3  2006-OA2, by and through its servicing agent Select Portfolio Servicing, Inc. ("Secured

4  Creditor") and Debtor, Samuel James Esworthy ("Debtor"), by and through their attorneys of

5  record, now enter into the below stipulation to resolve Debtor's Motion to Continue the

6  Automatic Stay (Dkt. #6) that was opposed by Secured Creditor (Dkt. #20) to provide adequate

7  protection payments to Secured Creditor during the pendency of this instant bankruptcy case, and

8  memorialize the parties agreement on to plan treatment of the first lien secured by real property

9  commonly known as 14817 Delano Street, Los Angeles, CA 91411.

## RECITALS

A. On or about 2/2/2006, Debtor, for valuable consideration, made, executed and delivered a Note secured by a First Deed of Trust both in the amount of $304,500.00 on the property commonly known as 14817 Delano Street, Los Angeles, CA 91411 ("Subject Property").

B. On 7/7/2016, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Central District of California.

C. As of the date of filing of said bankruptcy case, the total amount of Secured Creditor's claim with regard to the Subject Property was approximately $312,150.19.

D. On 7/8/2016, Debtor filed a Motion to Continue the Automatic Stay (Dkt. 6), and Secured Creditor filed an opposition (Dkt. #20) to that motion.

E. The parties have conferred and agreed upon adequate protection payments to resolve Debtor's Motion to Continue the Automatic Stay (Dkt. 6), and plan treatment of Secured Creditor's first lien secured by the Subject Property for purposes of Debtor's Chapter 11 Plan and those terms are reflected below.

///
///
///
///
///

2

# EXHIBIT 1

## THE PARTIES HERETO STIPULATE AND AGREE AS FOLLOWS:

1. This Stipulation affects the real property commonly known as 14817 Delano Street, Los Angeles, CA 91411 ("Subject Property").

2. **On or before 8/16/2016, Debtor will make a payment to Secured Creditor in the amount of $3,084.85**. Said amount will be applied contractually to the loan.

3. **Commencing 9/1/2016, Debtor will make regular monthly payments to Secured Creditor in the amount $2,473.44**. Said sum consists of P&I $1,486.69 + Insurance $123.17 + arrearage payment $863.58.   Said amount will be applied contractually to the loan.  Debtor agrees to make payments in this amount until Debtor receives a Forbearance Agreement from Secured Creditor post confirmation.

4. Payments shall be made directly to Secured Creditor, Select Portfolio Servicing, Inc. at Attn: Remittance Processing, P.O. Box 65450,Salt Lake City, UT 84165-0450, with reference to the last four digits of the Loan Number 3564, or as otherwise directed.

5. Upon confirmation Secured Creditor will provide Debtor with a formal forbearance agreement to cure all arrears that are due on the loan at the time the forbearance agreement is prepared over a period of thirty-sixty (36) months.

6. Debtor going forward will maintain both taxes and insurance related to the Subject Property directly outside of escrow, and if there is a default on these obligations Secured Creditor may exercise its remedies as described in the Deed of Trust and Note.

7. All other terms of the Deed of Trust and Note not directly altered by this agreement will remain in full force and effect.

8. Secured Creditor has relief from the automatic stay as to the Subject Property upon confirmation of Debtor's Chapter 11 Plan.

///
///
///
///
///
///

Stipulation, Case No. 1:16-bk-11985-MT
File No. CA-16-127699

EXHIBIT 1

9. In the event of a default on payments to Secured Creditor under the terms of this stipulation prior to the entry of the confirmation order, Secured Creditor shall notify Debtor and Debtor's counsel of the default in writing. Debtor shall have ten (10) calendar days from the date of the written notification to cure the default, and Debtor agrees to pay an additional $100.00 for attorneys' fees for each occurrence. If Debtor fails to cure the default, Secured Creditor may lodge a declaration of default and order terminating the automatic stay and include that the 14-day stay as provided in FRBP 4001(a)(3) is waived. Upon entry of the order the automatic stay shall be terminated and extinguished for purposes of allowing Secured Creditor to notice, proceed with, and hold a trustee's sale of the Subject Property, pursuant to applicable state law and without further Court Order or proceeding being necessary, including any action necessary to obtain complete possession of the Subject Property, including unlawful detainer.

10. In the event of a default on payments to Secured Creditor under the terms of this stipulation after the entry of the confirmation order, Secured Creditor may proceed pursuant to the terms of the underlying Note and Deed of Trust, and state and federal law, to obtain complete possession of the Subject Property, including unlawful detainer, without further Court Order or proceeding being necessary. Any and all default provisions included in Debtor's Chapter 11 Plan are not applicable to Secured Creditor with regard to the Subject Property, and Secured Creditor is only bound by the terms included in this stipulation.

///
///
///
///
///
///
///
///
///

4

EXHIBIT 1

1    11. If this Chapter 11 bankruptcy is dismissed or converted to another chapter under title 11,

2        Secured Creditor's lien shall remain a valid secured lien for the full amount due under the

3        original Promissory Note and all payments received under this agreement will be applied

4        contractually under the original terms of the Deed of Trust and original Promissory Note.

5    IT IS SO STIPULATED:

6                              ~~McCarthy & Holthus, LLP~~

7

8    Dated: _____8/4/16_____        _____

9                                        M. Jonathan Hayes, Esq.
                                         Attorney for Debtor, Samuel James Esworthy
10

11

12   Dated: ___8/8/2016_____       ___/s/ Kelly M. Raftery_____

13                                        Kelly M. Raftery, Esq.
                                         Attorney for Secured Creditor, Bank of New York
14                                        Mellon, f/k/a The Bank of New York, as trustee, on
                                         behalf of the holders of the Alternative Loan Trust
15                                        2006-OA2, Mortgage Pass Through Certificates
                                         Series 2006-OA2, its assignees and/or successors,
16                                        by and through its servicing agent Select Portfolio
                                         Servicing, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

29

5

EXHIBIT 1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  **17609 Ventura Blvd., Suite 314, Encino, CA 91316.**

A true and correct copy of the foregoing document entitled **DEBTOR'S THIRD AMENDED CHAPTER 11 PLAN OF REORGANIZATION** be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 10/5/2018 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐   Service information continued on attached page.

- **Katherine Bunker     kate.bunker@usdoj.gov**
- **Theron S Covey     tcovey@rasflaw.com, CAECF@tblaw.com**
- **Oscar Estrada     oestrada@ttc.lacounty.gov**
- **Dane W Exnowski     dane.exnowski@mcalla.com, bk.ca@mcalla.com**
- **Todd S Garan     ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com**
- **Michelle R Ghidotti     ECFNotifications@ghidottilaw.com**
- **M. Jonathan Hayes     jhayes@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;janita@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfirm.com**
- **John Rafferty     john.rafferty@bonialpc.com**
- **Kelly M Raftery     bknotice@mccarthyholthus.com, kraftery@ecf.courtdrive.com**
- **Cassandra J Richey     cmartin@pralc.com**
- **Brett P Ryan     ziggy.valerio@unifycu.com**
- **John D Schlotter     john.schlotter@mrpllc.com**
- **Najah J Shariff     najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov**
- **Diana Torres-Brito     ecfcca@ecf.courtdrive.com;dtorres-brito@pralc.com**
- **Edward A Treder     cdcaecf@bdfgroup.com**
- **United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov**
- **Jennifer C Wong     bknotice@mccarthyholthus.com, jwong@ecf.courtdrive.com**

**II.  SERVED BY U.S. MAIL:** On **10/5/2018** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed. ☐   Service information continued on attached page

Hon. Maureen A. Tighe                            Jim Esworthy
U.S. Bankruptcy Court                            8526 Kester Ave.
21041 Burbank Blvd., Suite 324              Panorama City, CA 91402
Woodland Hills, CA 91367

**RESNIK HAYES
MORADI LLP**

**III. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **10/5/2018** I served the following person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 10/5/2018 | Ja'Nita Fisher | /s/ Ja'Nita Fisher |
|-----------|----------------|--------------------|
| *Date* | *Type Name* | *Signature* |

**RESNIK HAYES
MORADI LLP**